# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| CANDYMAN KITCHENS INC., a Florida corporation, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No.: 8:18-cv-00869-SDM-CPT<br>) |
| v. | )<br>) |
| SANDCRAFTERS LLC, a Pennsylvania limited liability company, | ) JURY DEMANDED<br>)<br>) |
| SALLY SOLOMON, an individual, | )<br>)<br>) |
| SANDBLAST BY CREATIVE CONCEPTS, INC. an Alabama Corporation, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Comes now Candyman Kitchens Inc. ("Candyman Kitchens") with its complaint against SandCrafters LLC ("SandCrafters"), Sally Solomon ("Solomon") (collectively, "SandCrafters Defendants"), and Sandblast by Creative Concepts, Inc. ("Creative Concepts") (collectively with the SandCrafters Defendants, "Defendants"), alleging the following:

**NATURE OF THE ACTION**

1. This is an action brought for trademark counterfeiting, trademark infringement, unfair competition, contributory trademark counterfeiting, and contributory trademark infringement under the Lanham Act, 15 U.S.C. § 1051 *et seq.* ("Lanham Act"), and for cybersquatting under the Anticybersquatting Consumer Protection Act, 15 U.S.C. §

1125(d) ("ACPA"), to recover damages, injunctive relief, and other relief for Defendants' unlawful activities.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Candyman Kitchens is a Florida corporation with its principal place of business located in Pinellas County at 15732 Bolesta Road, Clearwater, Florida 33760.

3. Candyman Kitchens manufactures and sells a variety of confections, including edible sand art.

4. Defendant SandCrafters is a Pennsylvania limited liability company with its principal place of business located in Chester County at 77 Fairfield Lane, Chester Springs, Pennsylvania 19425.

5. Upon information and belief, SandCrafters sells edible sand art and accessories thereto.

6. Upon information and belief, Defendant Solomon is an individual and Pennsylvania citizen residing in Chester County at 77 Fairfield Lane, Chester Springs, Pennsylvania 19425—the same location as Defendant SandCrafters' principal place of business.

7. Upon information and belief, Solomon is the principal of SandCrafters.

8. Upon information and belief, Creative Concepts is an Alabama corporation with its principal place of business located in Jefferson County at 1500 Georgia Road, Building A, Irondale, Alabama 35210.

9. Upon information and belief, Creative Concepts manufactures and sells—throughout the United States and across the globe—edible sand art, a variety of dispensers

for edible sand art, candy "bits" (spheres of candy) and dispensers therefor, and candy "toppings" for use on other food, such as popcorn, cookies, and cupcakes.

10. This Court has original subject-matter jurisdiction to adjudicate the Lanham Act claims pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a).

11. This Court has original subject-matter jurisdiction to adjudicate the ACPA claim pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a).

12. This Court has personal jurisdiction over Defendants because their tortious acts of trademark counterfeiting (and contributing to such), trademark infringement (and contributing to such), unfair competition, and cybersquatting, *inter alia*, caused injury to persons or property in Florida; at the time of injury, Defendants were engaged in solicitation or services activities within Florida; and products, materials, or things processed serviced, or manufactured by Defendants were used or consumed within Florida in the ordinary course of commerce, trade, or use. As such, Defendants' tortious acts meet the requirements Florida's Long Arm Statute, Defendants' acts establish minimum contacts within Florida, and further satisfy the requirements of Constitutional Due Process. *See* Fla. Stat. § 48.193(1)(a)(6).

13. Venue is proper in this court pursuant to 28 U.S.C. § 1391 because Defendants conduct business nationwide, including this judicial District, and a substantial part of the events or omissions giving rise to this action's claims occurred in this judicial District.

**CANDYMAN KITCHENS' OWNERSHIP OF THE SANDY CANDY TRADEMARK**

14. In October 1996, Candyman Kitchens' President, David Klein ("Klein"), began using the name SANDY CANDY in interstate commerce as a distinctive indicator of

the source of his candy that is edible sand art, produced and sold at the time by another corporation for which Klein is the principal, Can You Imagine That! Confections Inc., a California corporation ("Can You Imagine That"). *See* Exhibit A, current SANDY CANDY Registration Status and Registration Certificate.

15. The SANDY CANDY mark quickly gained notoriety and has built substantial goodwill in the marketplace during its continuous use across the nation over the past 21+ years. *See* Exhibit B, 1998 Newspaper Article about SANDY CANDY products; *see also* Exhibit C, 2000 Newspaper Article about SANDY CANDY product development.

16. The United States Patent and Trademark Office ("PTO") issued the SANDY CANDY trademark registration, No. 2,415,707, on December 26, 2000 to Can You Imagine That. *See* Exhibit A.

17. Can You Imagine That continued to produce, distribute, and generate concomitant goodwill associated with its SANDY CANDY products for more than seventeen (17) years.

18. In February 2017, Klein opened Candyman Kitchens in Florida, which took over all production and distribution of SANDY CANDY products, continuing to this day.

19. Also in 2017, Can You Imagine That assigned the SANDY CANDY mark to Candyman Kitchens, first by an assignment executed on March 17th, which contained a scrivener's error corrected by a *nunc pro tunc* assignment executed on July 25th. *See* Exhibit D, Corrective Assignment; *see also* Exhibit E, Original Assignment.

20. As the assignments properly recorded with the PTO demonstrate, Candyman Kitchens is the current owner of a valid registration for the trademark SANDY CANDY on the principal register of the PTO, Registration No. 2,415,707. *Id*; *see also* <u>Exhibit A</u>.

## THE BUSINESS RELATIONSHIP

21. In early 1999, Klein reached out to Solomon at SandCrafters—which at that point sold non-edible sand art—and introduced Solomon to SANDY CANDY products. The two quickly reached an oral agreement for SandCrafters to distribute SANDY CANDY products.

22. On May 3, 1999, the SandCrafters Defendants registered the domain name "SandyCandy.com" ("Domain") with Can You Imagine That's permission. *See* <u>Exhibit F</u>, Domain WHOIS Record.

23. The SandCrafters Defendants used the Domain only to sell SANDY CANDY products, which were manufactured and provided solely by Can You Imagine That.

24. The SandCrafters Defendants and Can You Imagine That continued their business relationship for distribution throughout the following sixteen (16) years, wherein the SandCrafters Defendants became the largest, though not only, distributor of SANDY CANDY products.

## THE PRESENT DISPUTE

25. In the last months of 2016 and first months of 2017, a dispute arose over the amount and frequency of SANDY CANDY products supplied to the SandCrafters Defendants for distribution.

26. The final business transaction between Can You Imagine That and the SandCrafters Defendants for a shipment of SANDY CANDY products occurred on December 1, 2016, and the business relationship terminated shortly thereafter.

27. Upon the termination of the relationship, Candyman Kitchens immediately revoked its permission for the SandCrafters Defendants to use the SANDY CANDY mark.

28. Since at least March 2017, after the end of the business relationship and after permission for the SandCrafters Defendants' use of the SANDY CANDY mark had been revoked, the SandCrafters Defendants knew that the SANDY CANDY mark was registered with the PTO, and knew that Candyman Kitchens' was the rightful trademark holder.

29. Indeed, the SandCrafters Defendants' recognized the SANDY CANDY mark's value while the business relationship was ongoing because they inquired of Klein to purchase (i.e. acquire the assignment of) the mark in May 2016.

30. Yet, despite no longer having permission to use the SANDY CANDY mark since at least March 2017, the SandCrafters Defendants continued to use the Domain, identical with Candyman Kitchens' registered mark, and operate the website located on the Domain ("Website"). *See* Exhibit G, Screenshots of the Website, located on the Domain, after permission was revoked.

31. The SandCrafters Defendants also continued to use the SANDY CANDY mark on the Website itself, including trademark notices such as "TM," inexorably indicating to consumers that the Website was operated, associated with, or endorsed by the mark's rightful owner, Candyman Kitchens. *Id*.; *see also* Exhibit H, Screenshots of Website FAQ

page, showing eight (8) instances of "TM" use by SandCrafters Defendants in connection with the SANDY CANDY mark.

32. The SandCrafters Defendants further included a phone number on the Website for customers and prospective customers to contact in order to purchase the SANDY CANDY products advertised on the Website. *Id*.

33. However, the phone number provided on the Website placed customers and prospective customers in search of SANDY CANDY products—again inexorably misled to believe they would reach the operators or associates of Candyman Kitchens—in touch with SandCrafters, and specifically with Solomon.

34. Upon information and belief, once said consumers were on the phone with SandCrafters and specifically Solomon, they took the opportunity to make false and disparaging statements about both Candyman Kitchens and its SANDY CANDY products, including, *inter alia*, that Candyman Kitchens manufactured its SANDY CANDY products in a residential garage ("Disparaging Statements").

35. Based on the SandCrafters Defendants' false claims of SANDY CANDY's inferior quality, the SandCrafters Defendants further advised consumers to purchase from them Creative Concepts' competing edible sand art product, Pucker Powder, instead of the SANDY CANDY products the consumer was first interested in.

36. Candyman Kitchens is aware of at least two (2) specific consumers that navigated to the Website, were interested in SANDY CANDY products, called the phone number listed on the Website, and spoke to the SandCrafters Defendants, whereupon the

SandCrafters Defendants communicated the Disparaging Statements and solicited sales of the competing Pucker Powder products:

    a.    one Carol Evans, Director of Kid's Nite Out Recreation & Resort Management, Inc. in Buena Vista, Florida; and

    b.    one Jennifer Bedoka, an independent party planner in Rohnert Park, California.

37. Upon information and belief, many additional consumers both in Florida and nationwide were also confused by what party operated the Domain, what party operated the Website, the source of goods that the SANDY CANDY mark indicated, what goods were advertised by the Website, and what party said consumers would reach through the Website's phone number when acting on their interest in SANDY CANDY products.

38. The SandCrafters Defendants also sent an email newsletter to a presently unknown number of recipients in the relevant marketplace, which falsely and disparagingly claimed that Candyman Kitchens was improperly contacting the SandCrafters Defendants' customers. *See* <u>Exhibit I</u>, Email Newsletter.

39. Candyman Kitchens, through its then-counsel, repeatedly notified the SandCrafters Defendants of, and demanded that they cease, their wrongful continued operation of the Domain, their wrongful use of the SANDY CANDY mark on the Website, and their tortious Disparaging Statements and advertisements to consumers.

40. The SandCrafters Defendants refused the majority of Candyman Kitchens' requests to resolve the dispute without need for judicial intervention.

41. Eventually, months later, the SandCrafters Defendants agreed to alter the Website to display to visitors that the "site is no longer available." But the damage caused to Candyman Kitchens had already been done—and, indeed, continues to flow. *See* <u>Exhibit J</u>, Current Website Homepage.

**CREATIVE CONCEPTS' CONTRIBUTION TO INFRINGEMENT**

42. By July of 2017, the SandCrafters Defendants' tortious activities had been ongoing for several months.

43. On or about July 14, 2017, Klein visited Creative Concepts' factory in Birmingham, Alabama.

44. At the factory, Klein spoke face-to-face with Creative Concepts' founder and co-owner, Scott Green ("Green").

45. Klein informed Green that the SandCrafters Defendants were wrongfully using the SANDY CANDY mark, wrongfully using the identically-named Domain, and were thereby luring customers and prospective customers—interested in SANDY CANDY products—to purchase Creative Concepts' Pucker Powder instead.

46. Green claimed to have no knowledge of the SandCrafters Defendants' tortious activities.

47. Klein then used his smartphone to open the SandCrafters Defendants' squatting and infringing website on the Domain—showing it to Green.

48. Green saw the website, saw the infringing use of the SANDY CANDY mark, and had two somewhat surprising responses.

49. First, upon seeing the website, Green asked whether Klein was "wearing a wire."

50. Second, upon seeing the website, Green said that Creative Concepts "didn't want to get involved."

51. However, despite its founder and co-owner witnessing the SandCrafters Defendants' infringement, Creative Concepts continued to supply its Pucker Powder products to the SandCrafters Defendants.

52. Upon information and belief, Creative Concepts supplies Pucker Powder to the SandCrafters Defendants to this day.

53. Further, upon information and belief, Creative Concepts contacted the SandCrafters Defendants about Klein's visit to the factory and his conversation with Green. It is currently unknown what else Defendants' discussed about the interaction.

54. Creative Concepts, knowing of the SandCrafters Defendants' infringement, stuck its head in the sand and quietly reaped the benefit.

## THE HARM DEFENDANTS CAUSED

55. The SandCrafters Defendants' intentional wrongful retention and use of the Domain, identical to Candyman Kitchens' SANDY CANDY mark, to solicit and transact sales from consumers resulted in Defendants' profit at Candyman Kitchens' expense.

56. The SandCrafters Defendants' intentional wrongful retention and use of the Domain, identical to Candyman Kitchens' SANDY CANDY mark, to solicit and transact sales from consumers harmed the goodwill associated with Candyman Kitchens' SANDY CANDY mark in the marketplace.

57. The SandCrafters Defendants' intentional wrongful retention and use of the Domain, identical to Candyman Kitchens' SANDY CANDY mark, to solicit and transact sales from consumers drove said consumers towards the Domain and away from Candyman Kitchens' online location—its best alternative without the domain identical with its mark—www.candymankitchens.com.

58. The SandCrafters Defendants' wrongful continued use of the SANDY CANDY mark on the Website was likely to cause confusion, and in fact did cause confusion, in the marketplace as to the source, association, endorsement, or sponsorship of SANDY CANDY products.

59. The SandCrafters Defendants' wrongful continued use of the Domain, the Website located on the Domain, and the SANDY CANDY mark used on the Website, operated, *inter alia*, as an advertisement that misled and deceived consumers in search of SANDY CANDY products.

60. The SandCrafters Defendants' Disparaging Statements made to consumers telephonically, through email newsletters, and the like, misrepresented the nature, characteristics, and qualities of SANDY CANDY products to the benefit of Defendants and the detriment of Candyman Kitchens.

**COUNTS I & II – TRADEMARK COUNTERFEITING & INFRINGEMENT**
**[15 U.S.C. § 1114]**

61. Candyman Kitchens incorporates by reference all allegations in ¶¶ 1-60 as if fully set forth herein.

62. Candyman Kitchens is the rightful current owner of all trademark rights related to the SANDY CANDY mark, registered with and issued by the PTO.

63. The SandCrafters Defendants knew of Candyman Kitchens' ownership of the SANDY CANDY mark.

64. The SandCrafters Defendants willfully used reproductions, counterfeits, copies, or colorable imitations of Candyman Kitchens' SANDY CANDY mark in connection with the sale, offering for sale, distribution, or advertising of goods or services in interstate commerce with the intent to cause confusion, mistake, and to deceive consumers.

65. The SandCrafters Defendants knew their use of the SANDY CANDY mark was counterfeit and nonetheless proceeded with their unlawful activities for several months, over the objections and repeated warnings by Candyman Kitchens.

66. Said activities of the SandCrafters Defendants constitute violations of the Lanham Act under 15 U.S.C. § 1114(1)(a).

## COUNT III – CYBERSQUATTING
## [15 U.S.C. § 1125(d)]

67. Candyman Kitchens incorporates by reference all allegations in ¶¶ 1-60 as if fully set forth herein.

68. The Domain is identical with Candyman Kitchens' SANDY CANDY mark.

69. Candyman Kitchens' SANDY CANDY mark was distinctive at the time of the Domain's registration.

70. The SandCrafters Defendants trafficked in and used the Domain with a bad faith intent to profit, well after Candyman Kitchens' revoked permission to use the SANDY CANDY mark.

71. The SandCrafters Defendants' bad faith intent is evidenced by: (i) Candyman Kitchens trademark rights in the name; (ii) the SandCrafters Defendants' lack of bona fide

noncommercial or fair use of the SANDY CANDY mark under the Domain; and, most egregiously, (iii) the SandCrafters Defendants' intent to divert consumers from Candyman Kitchens' online location to the Domain, causing harm to the goodwill represented by the SANDY CANDY mark and creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the Website.

72. The SandCrafters Defendants' said activities constitute violations of the ACPA, 15 U.S.C. § 1125(d).

## COUNT IV – FEDERAL UNFAIR COMPETITION
## [15 U.S.C. § 1125(a)]

73. Candyman Kitchens incorporates by reference all allegations in ¶¶ 1-60 as if fully set forth herein.

74. The SandCrafters Defendants' activities are likely to cause confusion, mistake, or to deceive: (i) as to the affiliation, connection, or association of SandCrafters Defendants with Candyman Kitchens; or (ii) as to the origin, sponsorship, or approval of SandCrafters Defendants' goods, services, or commercial activities by Candyman Kitchens.

75. Further, the SandCrafters Defendants' activities constituted commercial advertising or promotion which misrepresented the nature, characteristics, qualities, or geographic origin of both the SandCrafters Defendants' and Candyman Kitchens' goods, services, or commercial activities.

76. Said activities of the SandCrafters Defendants constitute violations of the Lanham Act under 15 U.S.C. § 1125(a)(1)(A)-(B).

# COUNTS V & VI – CONTRIBUTORY TRADEMARK COUNTERFEITING & INFRINGEMENT
## [15 U.S.C. § 1114]

77. Candyman Kitchens incorporates by reference all allegations in ¶¶ 1-60 as if fully set forth herein.

78. Creative Concepts supplied the SandCrafters Defendants with Creative Concepts' Pucker Powder products, which competed with SANDY CANDY products.

79. The SandCrafters Defendants violated the Lanham Act under 15 U.S.C. § 1114(1)(a).

80. Indeed, the SandCrafters Defendants knowingly and willfully infringed the SANDY CANDY mark for their own economic benefit.

81. The founder and co-owner of Creative Concepts, Green, personally saw clear evidence of the SandCrafters Defendants' infringement.

82. Green, and his company, Creative Concepts, did nothing.

83. Creative Concepts continued to supply its Pucker Powder products to the SandCrafters Defendants in spite of Creative Concepts' knowledge of infringement.

84. Creative Concepts activities, as well as its willful blindness in inaction, constitute violations as a contributory infringer under the Lanham Act, 15 U.S.C. § 1114(1)(a).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Candyman Kitchens respectfully requests that this Court:

1. Under all claims for relief, award Defendants' profits, all damages Candyman Kitchens has sustained, and the costs of this action to Candyman Kitchens, pursuant to 15 U.S.C. § 1117(a).

2. Under all claims for relief, find that the circumstances of this case warrant awarding Candyman Kitchens the sum equaling three (3) times the amount found as actual damages, pursuant to 15 U.S.C. § 1117(a).

3. Under all claims for relief, find that this case is exceptional and award reasonable attorney's fees to Candyman Kitchens, pursuant to 15 U.S.C. § 1117(a).

**COUNT I & V – TRADEMARK COUNTERFEITING & CONTRIBUTORY TRADEMARK COUNTERFEITING**

(A) Find that the SandCrafters Defendants' knowing and willful use of counterfeit SANDY CANDY marks violated the Lanham Act, 15 U.S.C. § 1114;

(B) Find that Creative Concepts' continued distribution of its Pucker Powder products to the SandCrafters Defendants, while Creative Concepts knew of the SandCrafters Defendants' counterfeiting, violated the Lanham Act, 15 U.S.C. § 1114;

(C) Pursuant to 15 U.S.C. § 1117(b), award prejudgment interest to Candyman Kitchens on the treble damages and attorney's fees award amount at an annual interest rate established under 26 U.S.C. § 6621(a)(2), beginning on the date the respective Defendants were served with process and ending upon the entry of judgment;

(D) If Candyman Kitchens so elects before final judgment is rendered, instead of actual damages and profits, award Candyman Kitchens statutory damages amounting to $2,000,000 for Defendants' willful counterfeiting, pursuant to 15 U.S.C. § 1117(c); and

(E) Find that the SandCrafters Defendants and Creative Concepts are jointly and severally liable for all damages and costs awarded.

### COUNT II & VI – TRADEMARK INFRINGEMENT & CONTRIBUTORY TRADEMARK INFRINGEMENT

(A) Find that the SandCrafters Defendants' use of marks identical with or confusingly similar to Candyman Kitchens' federally registered SANDY CANDY mark violated the Lanham Act, 15 U.S.C. § 1114;

(B) Permanently enjoin the Defendants, and all others in active concert with them, from continuing to use Candyman Kitchens' SANDY CANDY mark or other designations confusingly similar to said mark.

(C) Find that the SandCrafters Defendants and Creative Concepts are jointly and severally liable for all damages and costs awarded.

### COUNT III – CYBERSQUATTING

(A) Find that the SandCrafters Defendants trafficking and use of the Domain violated the ACPA, 15 U.S.C. § 1125(d);

(B) Order the SandCrafters Defendants to transfer the Domain to Candyman Kitchens, pursuant to 15 U.S.C. § 1125(d)(1)(C);

(C) If Candyman Kitchens so elects before trial, award Candyman Kitchens statutory damages amounting to $100,000 instead of actual damages and profits, pursuant to 15 U.S.C. § 1117(d).

## COUNT IV – FEDERAL UNFAIR COMPETITION

(A) Permanently enjoin the SandCrafters Defendants, and all other persons or entities in active concert with Defendants, from continuing to engage in the conduct arising to federal unfair competition under the Lanham Act, 15 U.S.C. § 1125(a).

## DEMAND FOR JURY TRIAL

Plaintiff Candyman Kitchens hereby demands a jury trial of all issues so triable.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff Candyman Kitchens hereby designates Tampa, Florida as the place of trial for the above-styled matter.

Respectfully submitted this 4th day of June, 2018,

/s/ John T. Nelson
John T. Nelson
Florida Bar No.: 119309
Nelson Cyber Law, PLLC
360 Central Avenue, 8th Floor
St. Petersburg, FL 33701
(800) 440-5536
john@nelson.law
*Attorney for Plaintiff*
*Candyman Kitchens Inc.*
TRIAL COUNSEL

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 4, 2018, I electronically filed the foregoing First Amended Complaint and Demand for Jury Trial using the CM/ECF system, which will automatically serve the attorney E-Filers representing Defendants SandCrafters LLC and Sally Solomon. The newly-added Defendant, Sandblast by Creative Concepts, Inc. will be served in accordance with Federal Rule of Procedure 4.

                                                          /s/ John T. Nelson
                                                          John T. Nelson