IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| CANDYMAN KITCHENS INC., a Florida corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 8:18-cv-00869-SDM-CPT ) |
| SANDCRAFTERS LLC, a Pennsylvania limited liability company, | ) ) ) ) |
| SALLY SOLOMON, an individual, | ) ) ) ) |
| SANDBLAST BY CREATIVE CONCEPTS, INC. an Alabama Corporation., | ) ) ) ) |
| Defendants. | ) ) / |

**PLAINTIFF'S OPPOSITION TO DEFENDANT SOLOMON'S
MOTION TO DISMISS**

Plaintiff Candyman Kitchens Inc. ("Candyman") offers the following opposition to Defendant Sally Solomon's ("Solomon") motion to dismiss under Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(6) ("Motion"). *See* Dkt. 26. In support of its opposition, Candyman respectfully states as follows:

**MEMORANDUM OF LAW**

I. **FACTUAL BACKGROUND**

This dispute revolves around Solomon, and her co-defendants', misuse of the trademark SANDY CANDY ("Mark"), owned by Candyman and registered with the U.S. Patent and Trademark Office for edible sand art products. *See* Amended Complaint ¶¶ 14, 16.

David Klein ("Klein"), principal of Candyman and its predecessor-in-interest Can You Imagine That! Confections Inc. ("Can You Imagine That"), developed his edible sand art and began producing it under the Mark in 1996. *Id*. at ¶ 14. Through the continuous efforts of Klein, Can You Imagine That, and Candyman, the Mark has gained significant goodwill in the niche marketplace of edible sand art. *Id*. at ¶¶ 15, 17.

Solomon and the limited liability company of which she is the sole member, SandCrafters LLC ("SandCrafters"), were in the business of selling non-edible sand art until 1999. *Id*. at ¶¶ 6, 7, 21; *see also* Motion at p. 5 (twice stating that Solomon is the sole member of SandCrafters). It was not until Klein proactively contacted Solomon about his products and Mark that Solomon first heard of the Mark and began selling Klein's edible sand art under authorization. *Id*. at ¶ 21. The parties continued a business relationship as manufacturer (Can You Imagine That) and distributor (Solomon and SandCrafters) for sixteen (16) years thereafter. *Id*. at ¶ 24. Indeed, Can You Imagine That gave Solomon and SandCrafters permission to use the Mark in the domain name *SandyCandy.com* ("Domain") pursuant to its authorized distribution. *Id*. at ¶ 22.

A disagreement arose between Solomon and SandCrafters and Can You Imagine That over the amount and frequency of SANDY CANDY products delivered to Solomon and SandCrafters. *Id*. at ¶ 25. The disagreement ended with the parties terminating their business relationship shortly after December 1, 2016. *Id*. at ¶ 26.

The *crux* lies here. Upon termination of the business relationship, all permission and authorization for Solomon and SandCrafters to use the Mark, and the Domain identical to the Mark, was withdrawn. *Id*. at ¶¶ 27, 28. Can You Imagine That owned the federally registered

Mark, which it assigned to Candyman in March 2017. *Id*. at ¶¶ 19, 20. Yet, despite their permission to use the Mark being revoked, Solomon and SandCrafters continued to operate the Domain, which continued to advertise edible sand art products using the Mark, complete with "TM" notices attached to the Mark. *Id*. at ¶¶ 30, 31. Solomon and SandCrafters continued to operate a phone number for customers interested in SANDY CANDY products—using the phone line to misinform customers about the quality of goods sold under the Mark and recommending a competing product. *Id.* at ¶¶ 32-37.

Candyman repeatedly implored Solomon and SandCrafters to stop their unauthorized use of the Mark, but Solomon and SandCrafters refused for several months. *Id*. at ¶¶ 39, 40.

## II.  MOTION TO DISMISS STANDARD OF REVIEW

A complaint must present a "short and plain statement…showing that the pleader is entitled to relief." *See* FRCP Rule 8(a). That is, a complaint must articulate a claim that is "plausible on its face" with enough factual support such that the allegations, if taken as true, would subject the defendant to liability. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Twombly"). A complaint must give more than a "formulaic recitation of the elements of a cause of action." *Id*. at 555. By the same token, however, the FRCP Rule 8(a) standard does not require the complaint's allegations rise to the level of probability. *Id*. at 556. A plaintiff does not have to plead every fact. *Id*. at 570. Rather, the plaintiff must only plead enough facts to "nudg[e] their claims across the line from conceivable to plausible." *Id*. So although it is not a court's function to conjure facts on behalf of the plaintiff to make a complaint sufficient, "once a claim for relief has been stated, a plaintiff receives the benefit of imagination so long as the hypotheses are consistent with the complaint." *Id*. at 561, 563

(internal quotations and citations omitted). That is, the plaintiff must present more than an "unadorned, the-defendant-unlawfully-harmed-me accusation" but specific facts are not necessary. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*"); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

Courts should first separate factual allegations from legal conclusions and assume the factual allegations to be true. *See Iqbal* at 678-79. Next, courts should make all reasonable inferences from the factual allegations to determine whether they plausibly suggest that the legal conclusions are true, rather than being merely consistent with the legal conclusions being true. *Id.*

### III.   ARGUMENT

Solomon's Motion presents a 3-step argument:

First, the Motion asserts that, under Florida law, a member of a limited liability company may only be held personally liable for corporate actions under limited circumstances. That is correct—but those circumstances are met here.

Second, the Motion argues that the Amended Complaint makes no allegations against Solomon directly. That is incorrect—the Amended Complaint makes thirty-one (31) allegations that explicitly refer to Solomon's activities.

Third, the Motion claims that all of Solomon's activities were done as an agent of SandCrafters. Candyman could not agree more. That is in fact what brings this all together. The Amended Complaint alleges, and Candyman intends to prove, that Solomon, acting *directly* and as the sole member of SandCrafters, carried out the intentional torts of

cybersquatting, trademark infringement, trademark counterfeiting, and federal unfair competition.

### A. Solomon is Directly Liable for her own Tortious Acts.

An individual is liable for the torts she commits, even if said individual is a corporate officer. *See T-12 Entm't, LLC v. Young Kings Enters.*, 36 F. Supp. 3d 1380, 1394 (N.D. Ga. 2014) (citing *4 Louis Altman & Malla Pollack, Callmann on Unfair Competition, Trademarks and Monopolies* § 23:12 (4th ed.) ("everyone who knowingly personally participates in the tortious act is individually liable along with the corporation which he represents."). Indeed, individuals are liable for their own torts even when acting within the course of business. *See Gibson v. Resort at Paradise Lakes, LLC*, No. 8:16-cv-791-T-36AAS, 2017 U.S. Dist. LEXIS 125980, at *6 (M.D. Fla. Aug. 9, 2017) (Honeywell, J.) ("Gibson") quoting *First Fin. USA, Inc. v. Steinger*, 760 So. 2d 996, 997-98 (Fla. 4th DCA 2000) (citing *Orlovsky v. Solid Surf, Inc.*, 405 So.2d 1363 (Fla. 4th DCA 1981) ("It is well-settled…that individual officers and agents of a corporation may be held personally liable for their tortious acts, even if such acts were committed within the scope of their employment or as corporate officers."); *see also Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co., L.L.C.*, 125 F. Supp. 2d 1093, 1104 (S.D. Fla. 2000) ("Florida courts uniformly hold that if an officer, director, or agent commits or participates in a tort, whether or not his actions are by authority of the corporation or in furtherance of the corporate business, that individual will be liable to third persons injured by his actions."). That is, "[a] corporate officer or representative of a defendant corporation is not shielded from individual liability for his own torts." *Id*.

The rule applies with equal force in trademark cases[1] and cybersquatting cases as with other torts because "[n]atural persons, as well as corporations, may be liable for trademark infringement under the Lanham Act." *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991); *see also generally D.J. Miller Music Distribs. v. Strauser*, No. 8:09-cv-897-T-33TBM, 2009 U.S. Dist. LEXIS 85952 (M.D. Fla. Sep. 21, 2009) (Covington, J.) (denying defendants' motion to dismiss claims for trademark infringement and cybersquatting because the complaint sufficiently alleged personal liability). By its very nature, "a corporation can act only through individuals." *Id*. Thus, "if there was an infringement by the corporation, this infringement was caused by some one or more persons either officers or employees of the corporation who caused the acts to be done...If an individual actively and knowingly caused the infringement, he is personally liable." *Id*.

Some courts in this Circuit have analyzed whether an individual may be held *secondarily* liable (e.g. on a contributory or vicarious basis) for trademark infringement. *See, e.g., Luxottica Grp., S.p.A. v. Airport*, 287 F. Supp. 3d 1338, 1348 (N.D. Ga. 2017). However, it is clear that an individual may be held *directly* liable for torts she committed in the course of business. *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, No. 05-21113-CIV-TORRES CONSENT, 2007 U.S. Dist. LEXIS 9014, at *34 (S.D. Fla. Feb. 8, 2007) (Torres,

---

[1] Candyman alleges both trademark and federal unfair competition claims against Solomon, but the "central inquiry is the same for both." *Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*, 872 F.3d 1256, 1261-62 (11th Cir. 2017) (citations and internal quotations omitted).

M.J.) ("under Florida law, corporate officers and shareholders may be held personally liable *irrespective of whether liability attaches to the corporation*.") (emphasis added); *see also Quail Cruises Ship Mgmt. v. Agencia De Viagens CVC Tur Limitada*, No. 09-23248-CIV, 2011 U.S. Dist. LEXIS 122830, at *25 (S.D. Fla. Oct. 24, 2011) (same).

Finally, the Motion's reliance on the fact that Solomon's actions were conducted as an agent of SandCrafters is misplaced. *See* Motion at p. 5. An agency argument may have been an escape route for Solomon if Candyman were trying to pierce the corporate veil—but Candyman does not attempt, nor needs to, pierce the corporate veil in order to hold Solomon liable for her intentional torts. *See Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994) ("Babbit") (piercing the veil is irrelevant to a corporate individual's direct actions: "it is not necessary that the corporate 'veil' be pierced or even discussed.").

Here, as the Amended Complaint alleges and as discussed below, Solomon directly and knowingly engaged and perpetrated in trademark infringement, trademark counterfeiting, federal unfair competition, and cybersquatting.

### B. The Amended Complaint Alleges that Solomon Perpetrated Numerous Tortious Acts.

The Motion erroneously claims the Amended Complaint made no allegations against Solomon directly. *See* Motion at p. 5. That is simply false. As stated within the four corners of the Amended Complaint, it was *Solomon*, the sole member of SandCrafters acting in the course of SandCrafters' business, who continued to traffic in the Domain after Candyman revoked permission. *See* Amended Complaint at ¶ 30. It was *Solomon*, the sole member of SandCrafters acting in the course of SandCrafters' business, who continued to use the Mark without authorization while knowing and being put on notice that the Mark was held by

Candyman.² *Id.* at ¶¶ 31, 39, 40. And it was *Solomon*, the sole member of SandCrafters acting in the course of SandCrafters' business, who was more than happy to harm the Mark's goodwill with her disparaging statements and drive customers interested in SANDY CANDY products towards a direct competitor. *Id.* at ¶¶ 32-38. Thirty-one (31) allegations go on in this manner, articulating the tortious activities of Solomon *and* SandCrafters by referring to *both* Solomon and SandCrafters as the "SandCrafters Defendants."³ *Id.* at ¶¶ 22-32, 35, 36, 38-41, 42, 45-47, 51-60.

### C. The Criteria are met for Holding a Member of a Limited Liability Company Personally Liable.

Under Florida law, a member of a limited liability company may be held personally liable if said member breached her duties as a member and that breach constitutes "recklessness or an act or omission that was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of…property." *See* Fla. Stat § 605.04093(1) and (2) (defining "recklessness"). Members of a limited liability company owe a duty of care which includes "refrain[ing] from engaging in grossly negligent or reckless

---

² *Babbit* at 1184 (citing with approval *Tanning Research Lab. v. Worldwide Import & Export*, 803 F. Supp. 606, 610-11 (E.D.N.Y.1992), which held shareholders and officers personally liable for trademark infringement where the *individuals* infringed trademark *even after notification* from the trademark owner) (emphasis added).

³ Solomon fleetingly and incorrectly claims the Amended Complaint did not specify which counts applied to which defendants. *See Motion* at p. 2, fn. 1. In fact, the Amended Complaint explicitly identifies Solomon and SandCrafters as directly liable for cybersquatting, trademark infringement, trademark counterfeiting, and federal unfair competition, while identifying Defendant Sandblast by Creative Concepts, Inc. as liable for contributory trademark infringement and contributory trademark counterfeiting. *See* Amended Complaint ¶¶ 61-84.

conduct, willful or intentional misconduct, or a knowing violation of law." See Fla. Stat § 605.04091.

As discussed above, the Amended Complaint alleges that Solomon intentionally and willfully engaged in violations of the law. *See, e.g.,* Amended Complaint ¶¶ 55-57, 64. Solomon's intentional and willful violations were of intellectual property. *Id.* Further, Solomon acted with malicious purpose in her disparaging statements about Candyman that harmed the goodwill of the Mark and drove customers interested in SANDY CANDY products towards a direct competitor—to Solomon's own pecuniary gain as the sole member of SandCrafters. *Id.* at ¶¶ 33-36, 38, 60. Moreover, Solomon was repeatedly notified of the tortious nature of her and SandCrafters' actions, yet she continued her infringing activities in disregard of Candyman's Mark. *Id.* at ¶¶ 39-41.

Solomon is rightfully named as an individual defendant to be held directly and personally liable for her malicious acts and willful disregard of Candyman's property, in violation of her duties as a member of SandCrafters.

///

///

///

## IV. CONCLUSION

For the reasons set forth above, the Court should deny Solomon's Motion in its entirety because the Amended Complaint has stated plausible claims against Solomon sufficient to hold her personally liable for cybersquatting, trademark infringement, trademark counterfeiting, and federal unfair competition.

Respectfully submitted this 5th day of July, 2018,

/s/ John T. Nelson
John T. Nelson
Florida Bar No.: 119309
Nelson Cyber Law, PLLC
360 Central Avenue, 8th Floor
St. Petersburg, FL 33701
(800) 440-5536
john@nelson.law
*Attorney for Plaintiff*
*Candyman Kitchens Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 5th, 2018, I electronically filed the foregoing *Plaintiff's Opposition to Defendant Solomon's Motion to Dismiss* using the CM/ECF system which will automatically send notice of such filing to all counsel of record.

/s/ John T. Nelson
John T. Nelson