# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| CANDYMAN KITCHENS INC., <br> a Florida corporation, <br><br> Plaintiff, <br><br> v. <br><br> SANDCRAFTERS LLC, <br> a Pennsylvania limited liability company, <br><br> SALLY SOLOMON, <br> an individual, <br><br> SANDBLAST <br> BY CREATIVE CONCEPTS, INC. <br> an Alabama Corporation., <br><br> Defendants. | Case No.: 8:18-cv-00869-SDM-CPT |

## PLAINTIFF'S OPPOSITION TO DEFENDANT CREATIVE CONCEPTS' MOTION TO DISMISS

Plaintiff Candyman Kitchens Inc ("Candyman") offers the following opposition to Defendant Sandblast by Creative Concepts, Inc.'s ("Creative Concepts") motion to dismiss under Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(6) ("Motion"). *See* Dkt. 34. In support of its opposition, Candyman respectfully states as follows:

## MEMORANDUM OF LAW

I. **FACTUAL BACKGROUND**

This dispute revolves around the trademark SANDY CANDY ("Mark"), owned by Candyman and registered with the U.S. Patent and Trademark Office for edible sand art products. *See* Amended Complaint ¶¶ 14, 16.

David Klein ("Klein"), principal of Candyman and its predecessor-in-interest Can You Imagine That! Confections Inc. ("Can You Imagine That"), developed his edible sand art and began producing it under the Mark in 1996. *Id*. at ¶ 14. Through the continuous efforts of Klein, Can You Imagine That, and Candyman, the Mark has gained significant goodwill in the niche marketplace of edible sand art. *Id*. at ¶¶ 15, 17.

Can You Imagine That and Defendants Sally Solomon and SandCrafters LLC (Solomon and SandCrafters are, collectively, the "Underlying Infringers") began a business relationship in 1999 for the Underlying Infringers to distribute Candyman's SANDY CANDY products, which lasted for approximately sixteen (16) years. *Id*. at ¶¶ 21-24.

The business relationship between Can You Imagine That and the Underlying Infringers ended shortly after December 2016, the Underlying Infringers' permission to use the Mark was revoked, and they were notified to discontinue all use of the Mark by at least March 2017. *Id*. at ¶¶ 26-28. Incredulously, the Underlying Infringers continued to use and exploit the Mark for their own gain—disparaging SANDY CANDY products and encouraging customers and prospective customers interested in SANDY CANDY products to instead purchase competing "Pucker Powder" products supplied by the Underlying Infringers' new edible sand art supplier, Creative Concepts. *Id*. at ¶¶ 30-38.

Creative Concepts knew of the Underlying Infringers' bait-and-switch activities since at least July 14, 2017. *Id*. at ¶¶ 42-51. On that day, Candyman's principal, Klein, confronted Creative Concepts founder and co-owner, Scott Green ("Green"), about the Underlying Infringers…well, underlying infringement. *Id*. Klein told Green about the Underlying Infringers: (1) continued use of the Mark without permission; (2) continued use of a domain

name, *www.SandyCandy.com*, wholly incorporating the Mark ("Domain"), without permission; and (3) using the above to sell Creative Concepts' competing Pucker Powder to customers and prospective customers that were first interested in SANDY CANDY products. *Id*. at ¶¶ 43-45. Green *claimed* ignorance, and Klein removed any possibility of doubt by showing Green the Underlying Infringers' website on the Domain. *Id*. at ¶¶ 46-48. The interaction then ended abruptly. *Id*. at ¶¶ 49-50. Green communicated with the Underlying Infringers about the matter, but Creative Concepts continued to supply its competing Pucker Powder products to the Underlying Infringers—up to and including this day. *Id*. at ¶¶ 49-54.

II. **MOTION TO DISMISS STANDARD OF REVIEW**

A complaint must present a "short and plain statement…showing that the pleader is entitled to relief." *See* FRCP Rule 8(a). That is, a complaint must articulate a claim that is "plausible on its face" with enough factual support such that the allegations, if taken as true, would subject the defendant to liability. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Twombly"). A complaint must give more than a "formulaic recitation of the elements of a cause of action." *Id*. at 555. By the same token, however, the FRCP Rule 8(a) standard does not require the complaint's allegations rise to the level of probability. *Id*. at 556. A plaintiff does not have to plead every fact. *Id*. at 570. Rather, the plaintiff must only plead enough facts to "nudg[e] their claims across the line from conceivable to plausible." *Id*. So although it is not a court's function to conjure facts on behalf of the plaintiff to make a complaint sufficient, "once a claim for relief has been stated, a plaintiff receives the benefit of imagination so long as the hypotheses are consistent with the complaint." *Id*. at 561, 563 (internal quotations and citations omitted). That is, the plaintiff must present more than an

"unadorned, the-defendant-unlawfully-harmed-me accusation" but specific facts are not necessary. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Iqbal"); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

Courts should first separate factual allegations from legal conclusions and assume the factual allegations to be true. *See Iqbal* at 678-79. Next, courts should make all reasonable inferences from the factual allegations to determine whether they plausibly suggest that the legal conclusions are true, rather than being merely consistent with the legal conclusions being true. *Id.*

### III. ARGUMENT

A claim for contributory trademark infringement[1] cannot stand in the absence of a third-party's direct infringement. *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1245 (11th Cir. 2007); *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345-46 (11th Cir. 2012) ("Suntree"). In the presence of direct infringement by a third-party, here the Underlying Infringers Solomon and SandCrafters, one may be held liable as a contributory infringer by: (1) intentionally inducing the direct infringement; *or* (2) continuing to supply its products to the direct infringer while knowing or having reason to know of the infringement. *Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 854 (1982) ("if a manufacturer…continues to supply its product to one whom it knows or has reason to know

---

[1] The Lanham Act does not provide for separate causes of action *per se* as to counterfeiting and infringement, but instead "provides for specific kinds of relief for trademark infringement claims based on the sale of counterfeit goods." *See, e.g., Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536 (S.D.N.Y. 2015).

is engaging in trademark infringement, the manufacturer…is [contributorily] responsible for any harm done as a result of the deceit.") ("Inwood Labs"); *see also Transamerica Corp. v. Moniker Online Servs., LLC*, 672 F. Supp. 2d 1353, 1362-63 (S.D. Fla. 2009) ("Transamerica"). The basis of Creative Concepts' liability in this action is not based on any alleged intentional inducement of direct infringement, but instead on its continued supply of products to the Underlying Infringers while knowing of their infringement. *See* Amended Complaint at ¶¶ 42-54, 77-84.

Thus, to survive the Motion, the Amended Complaint must plausibly allege: (1) direct trademark infringement by the Underlying Infringers; (2) that Creative Concepts knew or had reason to know of the Underlying Infringers' direct infringement; and (3) that Creative Concepts continued to supply its products to the Underlying Infringers despite said knowledge.

The Motion does not attempt to argue the Amended Complaint's allegations were insufficient as to direct infringement; nor does the Motion attempt to argue the allegations were insufficient regarding supply. *See generally* Motion. Indeed, the only relevant element the Motion attacks is the sufficiency of allegations going to Creative Concepts' knowledge of direct infringement. *Id*. In that effort, Creative Concepts attempts to downplay the significance of the confrontation between Klein and Green—but no amount of repetition that the interaction was "unplanned" or "unscheduled" diminishes the fact, as alleged, of Creative Concepts' knowledge, as its founder and co-owner Green was told face-to-face and as he saw with his own eyes. *Id*. at pp. 3, 6 (reiterating six times that the interaction was unplanned,

unscheduled, unannounced, or without prior notice); *see also* Amended Complaint at ¶¶ 45-48.

### A. The Amended Complaint Plausibly Alleged Creative Concepts' Knowledge of the Underlying Infringers' Direct Infringement.

As indicated above, "liability for trademark infringement extends beyond those who actually infringe on the mark of another." *Suntree* at 1346 (quoting *Inwood Labs.* at 859) (quotations and modifications omitted); *see also Bauer Lamp Co., Inc. v. Shaffer*, 941 F.2d 1165, 1171 (11th Cir. 1991) ("A person who knowingly participates in furthering the direct infringement is liable as a contributing party."). Indeed, "[e]ven if a manufacturer does not directly control others in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances." *Mini Maid Servs. Co. v. Maid Brigade Sys.*, 967 F.2d 1516, 1521 (11th Cir. 1992) ("Mini Maid"); *see also Luxottica Grp., S.P.A. v. Airport Mini Mall, Ltd. Liab. Co.*, 186 F. Supp. 3d 1370, 1377 (N.D. Ga. 2016) ("This means that the plaintiff must allege that the defendant had the necessary state of mind — in other words that it intended to participate in *or actually knew about* the infringement") (quoting *Mini Maid*, internal quotations omitted). Further, "the knowledge element for purposes of the Lanham Act can be met by demonstrating that the operator was 'willfully blind.'" *Coach, Inc. v. Swap Shop, Inc.*, 916 F. Supp. 2d 1271, 1278 (S.D. Fla. 2012) ("Coach") (citing with approval, *inter alia*, *In re Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992). A fairly recent decision from this Court's sister District is instructive.

In *Transamerica*, a plaintiff conducting business in life insurance, investment planning, and retirement services brought claims against several defendants, that owned or

participated in a domain registration service, for, *inter alia*, trademark counterfeiting, trademark infringement, and cybersquatting. *Transamerica* at 1355-58. The defendants moved to dismiss the action, arguing as to knowledge for contributory infringement that the amended complaint did not sufficiently allege "specific knowledge of infringement or…direct control over the infringing instrumentality." *Id*. at 1363. The Court noted that the defendants' argument explicitly contradicted allegations of the complaint. *Id*. Further, to the extent the defendants claimed the plaintiff did not and could not demonstrate the knowledge element, the Court held that "[s]uch a discussion goes to matters of proof, not to the necessary elements of the claims. To survive a motion to dismiss, [plaintiff] need only allege the elements with a sufficient factual basis such that the claims are plausible." *Id*. The Court correctly denied the motion to dismiss. *Id*. at 1363-64, 1369.

Here, like the defendants in *Transamerica*, Creative Concepts' Motion has explicitly contradicted allegations in the Amended Complaint to escape liability. *Id*. at 1363; *see also* Motion at p. 8. Although, Creative Concepts has argued that Candyman "does not and cannot" demonstrate several aspects of inducement or control (which is not the basis of Candyman's complaint against Creative Concepts)—as to knowledge, Creative Concepts only briefly pauses to mischaracterize the confrontation between Klein and Green for the sake of arguing that such a brief encounter could not plausibly demonstrate Creative Concepts' knowledge. *See* Motion at p. 8. The Motion ignores the allegation that Klein directly informed Green of the Underlying Infringers': (1) use of the Mark without permission; (2) use of a website entirely comprised of the Mark without permission; and (3) bait-and-switching members of the marketplace interested in SANDY CANDY products into

purchasing Creative Concepts' competing products, supplied to the Underlying Infringers by Creative Concepts. *See generally* Motion; *see also* Amended Complaint at ¶¶ 43-45. Instead, Creative Concepts has put its efforts into waving away the encounter as "merely flashing [a] smartphone screen." *Id*. at p. 8. However, "ostrich-like business practices amount to willful blindness, which is sufficient to show the intent necessary to be a contributory infringer under the Lanham Act." *See Coach* at 1278. Further, the Motion's attempt to explain away the Amended Complaint's allegations, again like *Transamerica*, speaks to matters of proof rather than the sufficiency of the claims. *See Transamerica* at 1363; *see also Twombly* at 570 (holding that a plaintiff does not have to plead every fact and must only plead enough facts to "push the claim from the possible to the plausible.").

As correctly articulated by the U.S. Supreme Court in *Inwood*, a manufacturer, such as Creative Concepts, is contributorily liable for the direct infringement of its distributors when the manufacturer knew of the direct infringement and *still* supplied its products to said distributor. *See Inwood* at 853-54. That is the contribution; as alleged in the Amended Complaint, Creative Concepts knew the Underlying Infringers were using Candyman's Mark to lure in customers interested in SANDY CANDY products and instead sell Creative Concepts' competing Pucker Powder products. *See* Amended Complaint at ¶¶ 30-37, 41-54. All defendants, the Underlying Infringers and Creative Concepts, secured pecuniary benefits for themselves by participating in this practice, at the expense of Candyman. *Id*.

    **B. Creative Concepts Misconstrues the Applicability of *Mini Maid* at this Stage of the Proceedings.**

The Motion consistently relies on the decision in *Mini Maid* to buttress its position. *See* Motion at pp. 5, 7, 8. But Creative Concepts should find little comfort in that opinion.

First, the *Mini Maid* Court acknowledged the *Inwood* standard holding manufacturers contributorily liable for direct infringements that it knew of down the supply chain. *See Mini Maid* at 1521. Second, Creative Concepts seems to have misread or misspoken about the *Mini Maid* opinion because the Court there extended the applicability of the *Inwood* standard to apply in a franchisor-franchisee relationship, beyond the manufacturer-distributor/retailer scenario contemplated in *Inwood*. *Compare Mini Maid* at 1517 ("In this case we decide whether a franchisor can be held liable for a single act of trademark infringement allegedly committed by one of its many franchisees.") *with* Motion at p. 7 ("Like the defendant in Mini Maid, Creative Concepts and SandCrafters are *not* engaged in a franchisor-franchisee relationship or similar relationship.") (emphasis added). Finally, and relatedly, Creative Concepts' emphasis on the "extent and nature" of the communication between an underlying infringer and a contributory infringer improperly compares this case, which is at the *pleading stage*, with the Eleventh Circuit's appellate review of a *directed verdict* made after jury trial. *Id*. at 1518. That is, the litigants in *Mini Maid* had the full benefit of discovery and trial, while the litigants in this case have not yet had the chance to explore the extent of communications between the Underlying Infringers and Creative Concepts. Knowledge and communications have been explicitly alleged—but how far the rabbit hole goes is an issue of proof lying outside the bounds of a sufficiently stated claim.

### C. The Motion's Alternative Request for a More Definite Statement Should be Denied.

Creative Concepts has, in the alternative to its motion to dismiss, requested a more definite statement from Candyman. *See* Motion at pp. 9-10. This is an odd turn for Creative Concepts because a more definite statement is only proper when a pleading "is so vague or

ambiguous that the [responding] party cannot reasonably prepare a response." *See* FRCP Rule 12(e). The oddity does not end there, because the moving party "must point out the defects complained of and the details desired." *Id*. Creative Concepts identifies two facts as "so vague and ambiguous": (1) allegation ¶ 45, which to Candyman appears quite plain; and (2) allegation ¶ 53, which the Motion argues is "speculative and unsupported by fact." *See* Motion at p. 10. Paragraph 53 of the Amended Complaint states, in pertinent part, that "Creative Concepts contacted the SandCrafters Defendants about Klein's visit to the factory and his conversation with Green." That allegation is not unsupported by fact—it is the fact. It is the allegation, which Candyman intends to prove through discovery and at trial. No more definite statement is required.

**IV. CONCLUSION**

For the reasons set forth above, the Court should deny Creative Concepts' Motion in its entirety because the Amended Complaint has state plausible claims against Creative Concepts sufficient to hold it liable for contributory trademark counterfeiting and contributory trademark infringement.

Respectfully submitted this 13th day of August, 2018,

/s/ John T. Nelson
John T. Nelson
Florida Bar No.: 119309
Nelson Cyber Law, PLLC
360 Central Avenue, 8th Floor
St. Petersburg, FL 33701
(800) 440-5536
john@nelson.law
*Attorney for Plaintiff*
*Candyman Kitchens Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 13th, 2018, I electronically filed the foregoing *Plaintiff's Opposition to Defendant Creative Concepts' Motion to Dismiss* using the CM/ECF system which will automatically send notice of such filing to all counsel of record.

/s/ John T. Nelson
John T. Nelson